UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OMNI AMELIA ISLAND, LLC, a Delaware
limited liability company,

     Plaintiff,

                                            CASE NO.:  21-1255

vs.

AMELIA ISLAND PLANTATION
COMMUNITY ASSOCIATION, INC., a Florida
not-for-profit corporation,

     Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### DECLARATORY RELIEF REQUESTED
### INJUNCTIVE RELIEF REQUESTED

Plaintiff, OMNI AMELIA ISLAND, LLC, sues Defendant, AMELIA ISLAND PLANTATION COMMUNITY ASSOCIATION, INC., and alleges:

### Parties, Jurisdiction and Venue

1.     This action arises from actions taken by Defendant in breach of the relevant Amendment by Restatement of the Declaration of Covenants and Restrictions for the Amelia Island Plantation, Nassau County, Florida, and Provisions for the Amelia Island Plantation Community Association, as amended (the "Declaration") and the Class A Covenants and Class B Covenants (the Declaration, together with the Class A Covenants and Class B Covenants, are

61370679;2

hereinafter referred to as the "Covenants"), and further in breach of the fiduciary duties of Defendant's Board of Directors.  Defendant's actions leave Plaintiff uncertain of its rights with regard to the sale of real estate, and its own rights and responsibilities under the Covenants, thus causing uncertainty in the market in which Plaintiff is operating a hotel, commercial properties, and multi-family properties.  Defendant's actions as alleged herein also endanger marketable title for thousands of property owners.  Accordingly, Plaintiff brings this action for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, to declare the parties' respective rights and obligations under the Declaration and Class A and Class B Covenants, to enforce those documents, and to enjoin Defendant from engaging in these actions due to the irreparable nature of the damage these actions cause.

2.    Plaintiff, OMNI AMELIA ISLAND, LLC ("Plaintiff" or "Omni") is a Delaware limited liability company.  OHO Corporation is a Delaware corporation, which maintains its principal place of business in Dallas, Texas, and is the sole member of Omni.

3.    Defendant, AMELIA ISLAND PLANTATION COMMUNITY ASSOCIATION, INC. ("Defendant" or "AIPCA"), is a Florida not-for-profit corporation, which maintains its principal place of business in Nassau County, Florida.

61370679;2

4.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332 as the matter in controversy exceeds the value of $75,000.00 and is between citizens of different States.

5.      Venue is proper within this judicial district under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred in Nassau County, Florida, and the real property that is the subject of this action is located in Nassau County, Florida.

### The Amelia Island Plantation

6.      The Amelia Island Plantation ("Amelia Island") is an upscale, mixed-use resort and residential community located in Nassau County, Florida.

7.      Amelia Island is unique in that it includes residential owners of 1,031 single-family properties and 1,150 multi-family units clustered around the 1,350-acre Omni Amelia Island Resort (the "Resort"), which provides amenities and services to guests as well as members of the community.  Damage to the Resort, owned by Plaintiff, caused by the breach of the Declaration, could total millions of dollars.

8.      Amelia Island was originally developed by the Amelia Island Company approximately 50 years ago.  In 2009, the Amelia Island Company filed for Chapter 11 bankruptcy.  Through that bankruptcy, the Amelia Island Company pursued a reorganization effected through the sale of substantially all of the Amelia

Island Company's assets to a single purchaser, as it was believed that the continued operation of a first-class resort within the community offered the best means of protecting property values in Amelia Island.

9.      In September 2010, through a sale authorized by the bankruptcy court, Omni purchased for $67.1 million substantially all of the assets of the Amelia Island Company, including all real property owned by the Amelia Island Company in Nassau County as well as the Company's rights as developer and declarant under the Covenants.   The Special Warranty Deed effecting that transfer, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit A**, is recorded in Official Records Book 1700, Page 1211, *et seq.*, along with the Assignment of Developer's Rights, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit B**, which is recorded in Official Records Book 1700, Page 1337, *et seq.*, all of the Public Records of Nassau County, Florida.

10.      Consistent with the plan of reorganization, Omni has since operated the Resort as an "Omni" and, in so doing, has invested approximately an additional $110 million to improve and expand the Resort.

11.      As referenced, the symbiotic relationship between the Resort and the Amelia Island residents is unique in that Omni, as the successor to the Amelia

-4-

Island Company, the original developer, has retained both an ownership interest and a bundle of rights under the Covenants that affect the homeowners.

## Recorded Covenants, Restrictions and Affirmative Obligations Affecting the Amelia Island Plantation

12.    Consistent with the intended continued participation of the developer in the community, the Amelia Island Company established a unified scheme of covenants, restrictions and affirmative obligations affecting the properties within Amelia Island as can be seen from the 1974 Declaration which is recorded in Official Records Book 178, Page 249, *et seq*., of the Public Records of Nassau County, Florida.

13.    AIPCA was established as the master homeowners' association for Amelia Island, and it is governed by Chapter 720 of the Florida Statutes, the Florida Homeowners' Association Act, and by Chapter 617 of the Florida Statutes, the Florida Not for Profit Act.  Pursuant thereto, "[t]he officers and directors of [AIPCA] have a fiduciary relationship to the members who are served by the association."  § 720.303, Fla. Stat.

14.    Omni is a member of the AIPCA both in its status as successor to the Amelia Island Company, and as owner of property within Amelia Island.

15.    Among other things, the covenants and restrictions originally implemented by the Amelia Island Company set forth the scope of AIPCA's powers and authority.  The currently-operative covenants and restrictions are set

forth in the Declaration.  A true and correct copy of the Declaration, together with subsequent amendments thereto, is attached hereto and incorporated by reference herein as **Composite Exhibit C**.

16.    The Declaration provides express limited authority to be undertaken and exercised by the AIPCA.  There are also important rights granted to Omni as the successor to the Amelia Island Company, who held those rights at all times preceding the acquisition of its interests by Omni.

17.    Defendant is not vested with any discretion to take any action which has a material adverse impact upon the Amelia Island Company or its successor, Omni.  Instead, "any action proposed to be taken by the Association which has a material adverse impact upon the [Amelia Island] Company and/or commercial activities within the Properties shall require approval by a majority of the votes of the Type "B" members voting and in addition a majority of the votes of the Type "A" members voting." Declaration, Ex. C hereto, at Art. III, Sec. 2 (emphasis added).

18.    Type A members are comprised of owners of Residential Lots and Family Dwelling Units (as those terms are defined in the Declaration). *Id.* at Art. III, Sec. 1. Plaintiff Omni owns certain Residential Lots and Family Dwelling Units, and therefore has certain rights as a Type A member under the Declaration.

19.    Type B members are comprised of all Owners of Multi-Family Tracts and Public and Commercial Sites, Public and Commercial Units, Development Unit Parcels and Unsubdivided Lands (as those terms are defined in the Declaration).   Plaintiff Omni and its affiliates own, *inter alia*, the Resort, and therefore have certain rights as a Type B member under the Declaration.

20.    The use restrictions affecting residential properties within Amelia Island are set forth in the separate (a) Declaration of Rights, Restrictions, Affirmative Obligations, Conditions, Etc., which Constitute Covenants Running with Certain Lands of Amelia Island Company – Class "A" Covenants, April 3, 1972, For Single Family Detached and Patio Dwelling Areas, recorded in Official Records Book 122, Page 338, *et seq*., (the "Class A Covenants"), and (b) Declaration of Rights, Restrictions, Conditions, Etc., which Constitute Covenants Running with Certain Lands of Amelia Island Company – Class "B" Covenants, April 24, 1972, for Townhouses and Multi-Family Buildings (the "Class B Covenants"), recorded in Official Records Book 124, Page 230, *et seq*., all of the public records of Nassau County, Florida. A true and correct copy of the Class A Covenants, including amendments thereto, are attached hereto and incorporated by reference herein as **Composite Exhibit D**.  A true and correct copy of the Class B Covenants, including amendments thereto, are attached hereto and incorporated by reference herein as **Composite Exhibit E**.

21.    The Class A Covenants contain various covenants, restrictions and obligations applicable to single family residential properties.  Similarly, the Class B Covenants contain various covenants, restrictions and obligations applicable to multi-family residential properties.

22.    Neither the Class A Covenants nor the Class B Covenants provide AIPCA any power to amend their terms.  Instead, such power is reserved specifically to the owners within Amelia Island and, specifically, only a majority of those owners who would be substantially affected by an amendment which changed the permitted use of their property.

23.    To insure minimum standards are applied uniformly throughout Amelia Island, the Class A Covenants and Class B Covenants reserved to the Amelia Island Company (and now, to Omni) the authority to enforce the respective use restrictions through the power to approve or disapprove proposed improvements in Amelia Island.  Similarly, Article VII of the Declaration vests Omni and its duly appointed agents with architectural control, and pursuant to Article VI, Section 4 of the Declaration, AIPCA may set up and operate an architectural review board but only "in the event that the Association is designated by the [Amelia Island] Company as the agent of the [Amelia Island] Company for that purpose." Declaration, Ex. C hereto, at Art. VI, Sec. 4(e).  Omni has not delegated such authority to AIPCA.

-8-

24.     Without any obligation to do so, Omni has allowed the AIPCA to participate in the approval process by holding two seats on a four-seat architectural review board created under the powers reserved to Omni under the Class A and Class B Covenants.

## Omni's Right of First Refusal

25.     In addition to the use restrictions in the Class A and Class B Covenants, each incorporates a right of first refusal in favor of Omni.  Specifically:

> In the event the Owner desires to sell a residential site within Amelia Island Plantation, together with its improvements, if any, then said property shall be offered for sale to the Company at the same price at which the highest bona fide offer has been made for the property, and the said Company shall have thirty (30) days within which to exercise its option to purchase said property at this price; and should the Company fail or refuse, within thirty (30) days after receipt of written notice of the price and terms, to exercise its option to purchase said property at the offered price, then the owner of said property shall have the right to sell said property subject, however, to all covenants and limitations herein contained, at a price not lower than that at which it was offered to the Company.

Class A Covenants, Ex. D hereto, Part I, ¶ 11; Class B Covenants, Ex. E hereto, Part II, ¶ 9.

26.     The Amelia Island Company purposefully included the right of first refusal within the Class A and Class B Covenants as a complement to the continuing operations of the Resort and as a means to support property values

within Amelia Island and to protect against below market sales.  As such, with limited exceptions, Omni has regularly conditionally waived its right of first refusal through the execution and recording of a Waiver of Option to Purchase in the form attached hereto and incorporated by reference herein as **Exhibit F**.  The right of first refusal also is a valuable mechanism for Omni to support property values and re-develop Amelia Island in an organized fashion in the event that a hurricane or other major catastrophe destroys Amelia Island, or parts thereof, resulting in mass sales by the residents.

27.   As required by Florida law, if Omni chooses to exercise the right of first refusal, it may do so only on the same terms and conditions as the proposed underlying sale.  Similarly, Omni would thereafter own the property subject to the existing zoning and use restrictions.

28.   With respect to the Class A Covenants, Omni has exercised the right of first refusal on two occasions, and with respect to the Class B Covenants Omni has exercised the right of first refusal eleven times.

29.   Granting the right of first refusal to the original developer and its successor, Omni, was purposeful to protect against the negative effect of sub-market sales on an upscale community.  If sub-market transactions are permitted to close and remain of record, such transactions may establish a "comparable" within the market, depressing appraised values both within the specific neighborhoods

and Amelia Island in general.  The cascading effect of sub-market sales resulting from short sales and post-foreclosure sales contributed to the significant depression of property values through the Florida housing market crash of 2008.  The right of first refusal provides an important mechanism to insulate Amelia Island from such effects by affording Omni the ability to exercise its right of first refusal and re-sell the property at fair market value to effectively eliminate the sub-market "comparable" which would otherwise be used for appraisal purposes.

### AIPCA'S Efforts to Eliminate Omni's Substantive Rights Under the Class "A" and Class "B" Covenants

30.     On Friday, November 19, 2021, the AIPCA Board of Directors (the "Board") conducted a regularly scheduled meeting.  Attached hereto and incorporated by reference herein as **Exhibit G** is a true and correct copy of the Agenda issued in advance for the November 19, 2021 meeting.

31.     Included with the "Old Business" section of the November 19, 2021 Agenda was a generic reference to "Class A & Class B covenant changes update."

32.     At the November 19, 2021 Board Meeting, the Board provided much more than a mere update.  To the contrary, in a transparently pre-scripted presentation, members of the Board proposed and approved a resolution to fund and effect an amendment to the Class A and Class B Covenants as they relate to Omni's architectural review power and its existing right of first refusal. AIPCA had no power to do this many reasons, including the overall lack of authority for

-11-

AIPCA to amend the Class A and Class B Covenants, the rules applicable to a modification of the Class A and Class B Covenants, and the built-in protections in the Declaration against AIPCA actions that are materially adverse to Omni.

33.    Specifically, and without limitation, in January 2012, the parties executed a memorandum of agreement (the "2012 Agreement") whereby AICPA, among other things, recognized that its authority derived _only_ from the Declaration, which affords no power to amend the Class A or Class B Covenants. A true and correct copy of the 2012 Agreement is attached hereto and incorporated by reference herein as **Exhibit H**.

34.    Immediately upon the Board's action, in holding this meeting with its surprise vote on the Class A and Class B Covenants, AIPCA began mailing to homeowners within Amelia Island proposed amendments to the Class "A" and Class "B" Covenants together with purported consents to be executed and returned.

35.    The following day, November 20, 2021, the President of the AIPCA Board, Ron Nelson, issued via email a formal "Letter from the President" to all residential property owners within Amelia Island notifying them of the Board's action and actively lobbying for adoption of the proposed amendments.  This, too, the AIPCA had no legal right to do, as amendments to the Class A and Class B Covenants are not within its authority.

36.     Further, the Letter from Mr. Nelson, President of the Board, included a set of "Frequently Asked Questions" which he purported to answer. The proffered answers contained therein are highly inaccurate, and create an impediment to the transmission of accurate information by Omni.  Requests to cease such actions went unheeded.

37.     Before undertaking this action, the Board, in violation of the 2012 Agreement and of the rights of Omni under the Covenants, made no effort to inform Omni, including its representatives on the Board, of its draft amendments to the Class A and Class B Covenants or the Board's plan to effect such amendments. To the contrary, the AIPCA Board sought to conceal its behavior.

## Invalidity of AIPCA's Actions

38.     Through its effort to create hostile amendments to the Class A and Class B Covenants, the AIPCA Board took action which has a material adverse impact on Omni and in favor of AIPCA.  As such, AIPCA and its Board have exceeded the authority set forth in the Declaration which permits such adverse action only if authorized by a majority vote of the Type B members voting and in addition a majority of the votes of the Type A members voting.

39.     AIPCA has exceeded the scope of authority granted under Article VI of the Declaration by proposing the elimination of Omni's right of first refusal.

61370679;2

These ultra vires actions failed to comply with the obligations within the Declaration, AIPCA's duties of good faith and fair dealing, AIPCA's fiduciary duties, and the limitations in the Class A and Class B Covenants. In short, these actions by AIPCA exceed the enumerated required and discretionary services to be rendered by the AIPCA.

40.    Beyond being ultra vires under the Declaration, the amendments proposed by AIPCA are not allowed under the Class A and Class B Covenants. Specifically, the Class A and Class B Covenants permit owner-initiated amendments only to the extent such amendments modify the permitted use of property subject to the Covenants.

41.    The amendments proposed by AIPCA do not effect any use modifications but only concern the underlying development structure and the allocation of rights and responsibilities between Omni and AIPCA. To be certain, the amendments which AIPCA seek to effect constitute a radical change in the development plan for Amelia Island and are in violation of the terms of the Declaration and the Class A and Class B Covenants.

### Confusion within Amelia Island and Effect on Marketable Title

42.    In undertaking its clandestine efforts to amend the Class A and Class B Covenants, the AIPCA failed to follow its normal process and, in so doing, failed to vet significant substantive legal issues implicated by their actions.

-14-

43.     Defendant has created confusion in the market by, for example, failing to recognize the differing manner in which the Class A and Class B Covenants have been applied to various properties within Amelia Island.  Some properties are subject to the Covenants by reference within individual deeds. Alternatively, as illustrated by the Supplementary Restated Declaration of Class A Covenants and Restrictions for Amelia Island Plantation, Nassau County, Florida (Ocean Club Drive), recorded in Official Records Book 848, Page 1642, *et seq.* of the Public Records of Nassau County, Florida, and a true and correct copy of which is attached hereto and incorporated by reference herein as **<u>Exhibit I</u>**, other properties are subject to separate covenants and restrictions which incorporate the then-existing covenants with no reference to future amendments.

44.     Further, the Class B properties include certain condominiums subject to individual Declaration of Condominiums which contain separate purchase options accruing to Omni.  As such, owners of such condominiums are (a) being misled by AIPCA as to the effect of the proposed amendment to the Class B Covenants and (b) are not, in any event, substantially affected by the proposed elimination of the right of first refusal in the Class B Covenants, and, therefore, are not entitled to vote on the amendment even if it were legally proffered, which it is not.

45.     Further, as set forth in Exhibit F, Omni has routinely waived its right of first refusal through recorded waivers which incorporate the specific condition that the property remain subject to the provisions relating to the option to purchase granted by the Class A or Class B Covenants.  Owners who have acquired title pursuant to such a condition may be individually estopped from voting for the AIPCA amendment.  Alternatively, such amendment may become effective only upon a future, subsequent conveyance of the property.

46.     The foregoing is not exhaustive, but merely illustrative of the confusion and chaos which will result if AIPCA is permitted to proceed.  Upon the recording of the materials prepared by AIPCA, each and every owner of residential property within Amelia Island will face an uninsurable cloud on their marketable title as the owners struggle on a case-by-case basis to determine whether the amendment was authorized and valid; whether the amendment is effective as to their property; and, if it is, when such amendment would become effective.

### AIPCA's Refusal of Presuit Mediation

47.     Before filing this action, Omni contacted the AIPCA Board by letter dated November 22, 2021, to ask AIPCA to cease and desist from further action to permit the parties to engage in a meaningful presuit mediation conference.  After initially ignoring Omni's request, AIPCA subsequently advised Omni that AIPCA would not agree to postpone its actions to permit so much as an informal meeting

with Omni let alone a presuit mediation conference.  A true and correct copy of Omni's November 22, 2021 letter is attached hereto as **Exhibit J**.

48.    Consistent with Section 720.311(2)(a) of the Florida Statutes, Omni requests that the Court order the parties to mediate after hearing a motion for temporary injunctive relief.

## COUNT  I – Declaratory Judgment

49.    Plaintiff Omni re-alleges the allegations in paragraphs 1 through 48 as if fully stated herein.

50.    With exceptions not relevant here, in any "case of actual controversy within [their] jurisdiction," federal courts have the power to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

51.    An actual controversy exists between the parties.

52.    The parties disagree as to AIPCA's obligations under the Declaration and the actual scope of the powers AIPCA has under those documents, as well as the Class A and Class B Covenants, with respect to the actions it took and continues to take as outlined above.

53.    The parties also disagree as to whether the proposed amendments are enforceable, including whether they are arbitrary, capricious or in bad faith.

54.    Particularly, the parties disagree as to whether:

    a.     AIPCA has exceeded its authority under the Declaration when it took and continues to take the actions outlined above.

    b.     Whether the amendments to be effected by AIPCA exceed the authority under the Class A and Class B Covenants.

    c.     Whether the amendment process complies with the amendment process required under the Class A and Class B Covenants.

    d.     Whether AIPCA acted inconsistently, and in breach of its obligations to Omni under the 2012 Agreement, when it took and continues to take the actions outlined above.

    d.     Whether AIPCA acted inconsistently, and in breach of its obligations to Omni under the Declaration, when it took and continues to take the actions outlined above.

    e.     Whether the AIPCA Board acted inconsistently with, and in breach of its fiduciary duties to Omni as a member of the association, when it took and continues to take the actions outlined above.

    f.     Whether the AIPCA Board acted inconsistently with, and in breach of its obligations to Omni's representatives on the Board.

    g.     Whether AIPCA's proposed amendments are arbitrary and capricious or proposed in bad faith by the Board, and whether they constitute a "radical change in plan" from the currently-existing covenants.

55.    As a result of the disagreements, Omni is in doubt as to the parties' rights, privileges, and obligations under the aforementioned documents and whether the proposed amendments would be enforceable.

56.    AIPCA erroneously disputes Omni's position on these issues, and Omni's legal rights are being affected by AIPCA's actions as outlined above.  Thus, there is a bona fide, actual, and present practical need for the Court to declare the parties' rights, privileges, and obligations under the 2012 Agreement and the Declaration and the actual scope of the powers AIPCA has under those documents, as well as the Class A and Class B Covenants as they relate to the actions AIPCA took and continues to take as outlined above.

57.    Entering a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations as outlined above, and will eliminate the uncertainty and controversy arising from AIPCA's actions as outlined herein, insecurity, and controversy giving rise to the proceeding.

58.    This Court can and should exercise its equitable power to enter a declaration stating that:

a.    AIPCA's actions seeking to amend the Class A and Class B Covenants to eliminate Omni's right of first refusal exceeded the scope of AIPCA's power and thus are void and of no effect.

b.     AIPCA's actions seeking to amend the Class A and Class B Covenants to limit or eliminate Omni's rights as to architectural review power exceeded the scope of AIPCA's power and thus are void and of no effect.

c.     AIPCA's actions seeking to amend the Class A and Class B Covenants to eliminate Omni's right of first refusal were done in breach of the 2012 Agreement, and thus are void and of no effect.

d.     AIPCA's actions seeking to amend the Class A and Class B Covenants to limit or eliminate Omni's rights as to architectural review power were done in breach of the 2012 Agreement, and thus are void and of no effect.

e.     AIPCA's actions seeking to amend the Class A and Class B Covenants to eliminate Omni's right of first refusal were done in breach of the Declaration, and thus are void and of no effect.

f.     AIPCA's actions seeking to amend the Class A and Class B Covenants to limit or eliminate Omni's rights as to architectural review power were done in breach of the Declaration, and thus are void and of no effect.

g.     The AIPCA Board of Directors' actions seeking to amend the Class A and Class B Covenants to eliminate Omni's right of first refusal

were done in breach of their fiduciary duties to Omni, and thus are void and of no effect.

h.      The AIPCA Board of Directors' actions seeking to amend the Class A and Class B Covenants to eliminate Omni's right of first refusal were done in breach of their obligations to Omni's representatives on the Board, and thus are void and of no effect.

i.      The AIPCA Board of Director's actions seeking to amend the Class A and Class B Covenants to limit or eliminate Omni's rights as to architectural review power were done in breach of their fiduciary duties to Omni, and thus are void and of no effect.

j.      The proposed amendments to the Class A and Class B Covenants to eliminate Omni's right of first refusal are not permitted by the covenants and thus are void and of no effect.

k.      The proposed amendments to the Class A and Class B Covenants to limit or eliminate Omni's rights as to architectural review power are not permitted by the covenants and thus are void and of no effect.

l.      The proposed amendments to the Class A and Class B Covenants to eliminate Omni's right of first refusal are arbitrary and capricious, and proposed in bad faith and constitute a "radical change in

plan" from the currently existing covenants, and thus are void and of no effect.

m.    The proposed amendments to the Class A and Class B Covenants to limit or eliminate Omni's rights as to architectural review power are arbitrary and capricious, and proposed in bad faith and constitute a "radical change in plan" from the currently existing covenants, and thus are void and of no effect.

n.    The amendment process effectuated by the Board is inconsistent with the amendment process required by the Class A and Class B Covenants, and thus the results thereof are void and of no effect.

## Count II – Injunctive Relief

59.    Plaintiff Omni re-alleges the allegations in paragraphs 1 through 48 above as if fully stated herein.

60.    The actions taken by AIPCA as set forth above are and were beyond the scope of AIPCA's authority as provided to it under the Declaration, Class A and Class B Covenants and Chapter 720 of the Florida Statutes.

61.    These same actions are inconsistent with, and constitute a breach of the AIPCA Board Members' fiduciary duties to Omni as set forth in the Class A and Class B Covenants and Section 720.303.

62.     These same actions are inconsistent with, and constitute a breach of AIPCA's obligations to Omni under the 2012 Agreement.

63.     These same actions are inconsistent with, and constitute a breach of AIPCA's obligations to Omni under the Declaration.

64.     These same actions are inconsistent with, and constitute a breach of AIPCA's obligations to Omni's representatives on the Board.

65.     The proposed amendments are not permitted by the Class A and Class B Covenants.

66.     The amendment process is not permitted by the Class A and Class B Covenants.

67.     The proposed amendments are arbitrary and capricious or proposed in bad faith by the AIPCA Board of Directors, and constitute a radical change in plan from the currently existing covenants.

68.     Omni has a clear legal right to have AIPCA act consistently and only within the powers granted to them under the Declaration, Class A and Class B Covenants, and Chapter 720 of the Florida Statutes.

69.     Omni has a clear legal right to have the AIPCA Board of Directors refrain from acting inconsistent with and breaching its fiduciary duties to Plaintiff under the Class A and Class B Covenants and Section 720.303, Fla. Stat.

61370679;2

70.    Omni has a clear legal right to have the AIPCA refrain from breaching its obligations under the 2012 Agreement.

71.    Omni has a clear legal right to preclude enforcement of the covenant amendments as they are arbitrary and capricious and proposed in bad faith by the AIPCA Board of Directors, and constitute a "radical change in plan" from the currently existing covenants.

72.    In the absence of an injunction, Omni will be irreparably harmed. The actions being taken by AIPCA would eliminate certain of Omni's rights in and connected to real property that cannot be compensated adequately by an award of damages.  Thus, Omni has no adequate remedy at law.

73.    An injunction would not be contrary to the public interest. In fact, as explained herein, the actions by AIPCA herein will both undermine the property values of all of the owners in Amelia Island, but also sow unnecessary confusion and endanger marketable title for thousands of property owners in Amelia Island. As such, an injunction will serve the public interest.

WHEREFORE, Plaintiff, OMNI AMELIA ISLAND LLC, respectfully requests the entry of a judgment declaring that (1) AIPCA's actions seeking to amend the Class A and Class B Covenants to eliminate Omni's right of first refusal exceeded AIPCA's powers, were done in breach of the 2012 Agreement and the Declaration, were done in breach of the AIPCA's Board of Directors' fiduciary

-24-

duties to Omni and obligations to Omni's representatives on the Board; (2) the proposed amendment itself is arbitrary and capricious, and proposed in bad faith and constitutes a "radical change in plan" from the currently existing covenants; (3) AIPCA's actions seeking to amend the Class A and Class B Covenants to limit or eliminate Omni's rights as to architectural review power exceeded AIPCA's powers, were done in breach of the 2012 Agreement and the Declaration, were done in breach of the AIPCA's Board of Directors' fiduciary duties to Omni and obligations to Omni's representatives on the Board; (3) that both of the proposed amendments are arbitrary and capricious, and proposed in bad faith and constitute a "radical change in plan" from the currently existing covenants; and (4) that both of the proposed amendments are void and of no effect.

Further, Plaintiff, OMNI AMELIA ISLAND LLC, respectfully requests, as necessary and proper relief to avoid the imposition of irreparable injury, the entry of a permanent injunction requiring Defendant AMELIA ISLAND PLANTATION COMMUNITY ASSOCIATION, INC. and its Board of Directors to refrain from further proceeding with the process of seeking amendment to the Class A and Class B Covenants to eliminate Omni's right of first refusal and to limit or eliminate Omni's rights as to architectural review power, together with an award of costs incurred in bringing this action and such further relief as the Court deems appropriate.

61370679;2

Dated: December 17, 2021                    Respectfully submitted,

**AKERMAN LLP**

By: */s/ Cindy A. Laquidara*
Cindy A. Laquidara, Lead Counsel
Florida Bar Number: 394246
Email: cindy.laquidara@akerman.com
Secondary Email: kim.crenier@akerman.com
Secondary Email:
matthew.drawdy@akerman.com
Howard Jay Harrington
Florida Bar Number: 0118719
Email: jay.harrington@akerman.com
Secondary Email: susan.scott@akerman.com
50 North Laura St., Suite 3100
Jacksonville, FL 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

61370679;2